## MARY D. OSBORNE *vs.* BOSTON ICE COMPANY.

Suffolk, January 16, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Negligence.   Animal.*

In an action for personal injuries from being kicked by one of a pair of horses attached to an ice team of the defendant, as the plaintiff was walking along a narrow sidewalk of a street only seven feet wide from curb to curb at its narrowest point, there was evidence that the horse that kicked the plaintiff was a gray horse, that a gray horse used in one of the ice teams of the defendant, which might have been the horse that kicked the plaintiff, was a green one and known to be somewhat irritable, that he had given trouble when being harnessed ever since he had been owned by the defendant, and that he had a boil on his neck which irritated him.  There was other evidence which was conflicting and irreconcilable.  *Held*, that the questions as to the identity of the horse that kicked the plaintiff, whether the horse was vicious, and if so whether the defendant knew or should have known this, and whether he used proper care to protect the plaintiff from injury, were for the jury.

TORT for personal injuries from being kicked by one of a pair of horses attached to an ice team of the defendant as the plaintiff was walking along the sidewalk of Norfolk Place, leading from Harrison Avenue extension to Washington Street, in Boston, at 8.15 A. M. on April 25, 1902.    Writ dated January 10, 1903.

At the trial in the Superior Court before *Sherman,* J. the evidence was conflicting.

There was evidence tending to show that two teams of the defendant delivered ice in Norfolk Place; that one team driven by one Nutting delivered ice at Marston's restaurant near Washington Street in a building called the Arcade on the right hand side of Norfolk Place coming from Washington Street, and that the other team driven by one Hale delivered ice for R. H. White's soda fountain, the entrance to which was near Harrison Avenue extension and was on the opposite side of Norfolk Place from the Arcade; that the width of the ice cart was six feet and five inches from tire to tire and that the hubs extended six inches on each side; that Norfolk Place was two hundred and sixty-six feet long, and was at its narrowest point seven feet from curb to curb.

There was evidence that at some time during that spring there had been driven on the nigh side of Nutting's team a green horse that had been known to be somewhat irritable.   Both of Hale's horses were kind and gentle and had never been known to kick.

On cross-examination Nutting testified as follows :

" Well, I don't know exactly what horse I had on the twenty-fifth of April; I was at one time driving a gray horse that I had some trouble with, on the Norfolk Place route, he was one of a pair of gray horses; I usually backed in to Norfolk Place, and if I backed in it would bring that gray horse that I had trouble with nearest to the sidewalk ; most always when I was in Norfolk Place that horse was nearest to the narrow sidewalk ; I had trouble with harnessing him as soon as I got him; I had trouble harnessing him the first night I got him; from that time on I always had trouble harnessing him; I had trouble with harnessing him from the time I took him until they let him go ; I don't know what became of him afterwards ; it is true that Norfolk Place is so narrow that we had to stop near the sidewalk wherever we could; whether it was near the place where we were to deliver ice or not, we had to get the ice wherever we could stop and drag it up to where we wanted to put it; I delivered ice on the side of the street opposite R. H. White's ; Hale delivered ice on the same side of the street as R. H. White's ; that is we delivered ice on the side the narrow sidewalk was on."

One Johnson, a stableman in the employ of the defendant, testified that the horses driven by Hale were quiet, gentle and good; that he never knew of their kicking; that Nutting's off horse was a good, steady one and that the nigh one which he used about the time of the accident was a green one, which had a boil on his neck that irritated him ; that the boil was there when they bought him but that after it healed he was quiet and steady ; and that he never had seen him kick.

Upon cross-examination he testified that Nutting drove a pair of gray horses in April, 1902 ; that there was no record kept at the company's office to enable him to know what particular horses were driven at that time.

There was evidence that the horse that kicked the plaintiff was a gray horse.

At the close of the evidence the counsel for the defendant asked the judge to rule that, upon all the evidence the plaintiff was not entitled to recover and to direct a verdict for the defendant. This the judge refused to do and submitted the case to the jury. The jury returned a verdict for the plaintiff in the sum of $2,300; and the defendant alleged exceptions.

*W. I. Badger*, (*W. H. Hitchcock* with him,) for the defendant.

*W. B. Sprout*, for the plaintiff.

HAMMOND, J. The evidence in this case was conflicting and irreconcilable. We have carefully considered it. It would serve no useful purpose to rehearse it in detail. We are of opinion that the questions as to the identity of the horse which kicked the plaintiff, whether the horse was vicious, and whether the defendant knew or should have known it and used proper care to protect the plaintiff from injury were for the jury. The judge rightly refused to order a verdict for the defendant.

*Exceptions overruled.*